## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## COLUMBIA DIVISION

| | | |
|---|---|---|
| **BRANDON NANCE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:08-0043** |
| | ) | **Judge Echols** |
| **WAYNE COUNTY,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

### MEMORANDUM

This is an action brought under 42 U.S.C. § 1983 alleging violations of Plaintiff Brandon Nance's ("Mr. Nance's") Eighth and Fourteenth Amendment rights for the medical treatment he received or did not receive while an inmate at the Wayne County Jail in Waynesboro, Tennessee. Named as Defendants are Wayne County, Wayne County Sheriff's Department, Mayor Jason Rich ("Mayor Rich") and Sheriff Ric Wilson ("Sheriff Wilson"). The individual Defendants are named solely in their official capacity as the Mayor and Sheriff of Wayne County, respectively.

Pending before the Court is Defendants' Motion for Summary Judgment (Docket Entry No. 65). Plaintiff has responded in opposition to that motion (Docket Entry Nos. 97 & 118), and Defendants have filed a reply (Docket Entry No. 125).

### I. FACTUAL BACKGROUND

Generally when this Court rules on a Motion for Summary Judgment, the Court first sets forth the undisputed facts, and construes those facts which are disputed in favor of the non-moving

1

party. That process has been complicated in this case because the medical records[1] from the county jail which pertain to Plaintiff during his incarceration have, for unexplained reasons, disappeared.

In the absence of the medical records, Defendants rely heavily upon the deposition testimony of the Jail Nurse, Teresa Gay Gower ("Nurse Gower"), who admitted in her deposition that her encounters with the Plaintiff would have been documented in the medical records. Plaintiff asserts that the medical records would be the "best evidence" of Plaintiff's complaints and the treatments he did or did not receive, and for that reason "Plaintiff disputes all of the facts alleged by the Defendants that are contained within the Plaintiff's medical file at Wayne County." (Docket Entry No. 114, *passim*). A review of Nurse Gower's deposition indicates her recollection of events would have been aided by reference to those medical records and thus there is some basis for Plaintiff's complaint. Further, some of the details regarding Plaintiff's medical care are sketchy and undoubtedly would be amplified with the medical records. With the limitations imposed by the record presented, the Court sets forth the facts in roughly chronological order, construing them in Plaintiff's favor.

On June 13, 2007, Plaintiff was involved in a motor vehicle accident which resulted in his hospitalization at Vanderbilt Medical Center. Plaintiff suffered very serious injuries in the accident, including an obvious right open femur fracture, ruptured spleen, and multiple rib fractures. Plaintiff underwent surgery and a titanium rod was inserted in his right femur. Plaintiff was released from Vanderbilt Medical Center on June 20, 2007, and was provided with a walker[2] to aid in ambulation.

---

[1]However, Plaintiff's medication logs, which are usually filed with the medical records, were produced during discovery and are in the record.

[2]In his deposition, Plaintiff testified he purchased a walker on his own because "it couldn't hurt nothing to use it." (Pf. Depo. at 25). However, the medical records from Vanderbilt Medical

2

On July 31, 2007, Plaintiff was arrested for the sale of Schedule III drugs and taken to the Wayne County Jail. Upon his arrival, Plaintiff did not have his walker with him. The walker was later delivered to the jail.

While at the Wayne County Jail, Plaintiff was not allowed to have the walker in his cell due to security concerns that the walker could be used as a weapon. However, Plaintiff was allowed to use the walker during exercise periods because inmates are more closely monitored by correctional officers during that time.

Plaintiff claims that he first saw Nurse Gower a week or so after intake at which time his pain level was a "ten" on a scale of one to ten. Plaintiff told Nurse Gower he needed his blood pressure medication and he was in a lot of pain. Plaintiff also explained to Nurse Gower that a titanium rod had been placed in his leg and told her about the prescriptions he had been given.

At the time Plaintiff was housed at the Wayne County Jail, he had several active prescriptions, including Hydrocodone, a pain medication, and Zyprexa, an antipsychotic drug, written by doctors at Vanderbilt Medical Center. Those medications were not with him when he entered the jail and he was not provided those medications while at the jail.[3] Nurse Gower admitted in her deposition that she did not review Plaintiff's medical record before deciding that Plaintiff would not be given his prescription medication. She also testified that Plaintiff was not allowed to take Hydrocodone because the jail's policy prohibited the administration of narcotics and sedatives.

_____

Center indicate that Plaintiff was provided with a walker at the time of his discharge.

[3]Plaintiff did, however, begin to receive prescribed blood pressure medications on or about August 5, 2007.

3

Nurse Gower, as a Registered Nurse, cannot determine if a prescription is necessary, cannot write a prescription, and cannot write orders. Defendants assert that such decisions were made by the Medical Director after consultation with Nurse Gower. In this vein, Nurse Gower claims that she contacted the Medical Director who oversaw healthcare at the jail and, after explaining the situation, the decision was made that Plaintiff was not to be provided with medication for his complaints of pain, notwithstanding the prescriptions which had been issued by Vanderbilt Medical Center. However, Nurse Gower's deposition testimony indicates that she only has vague recollections of the purported conversation.

Late in the afternoon of August 10, 2007, Plaintiff again complained of pain in his right leg, as well as numbness, and claims that the leg was swollen at that time. Nurse Gower saw Plaintiff later that same evening. The discharge records from Vanderbilt Medical Center indicate that Plaintiff was instructed to go to the emergency room if his leg showed signs of infection. Signs of infection include redness and swelling. Plaintiff was not taken to a hospital at this time, nor given any pain medication.

Sometime in mid-to-late August 2007, Plaintiff fell while taking a shower, after his right leg became numb and collapsed from underneath him. As a result of the fall, Plaintiff separated his shoulder. Plaintiff did not report the fall that day, as he was more concerned about his right leg at the time. Plaintiff reported the fall to the Jail Administrator, Casey Jones ("Jail Administrator Jones"), the next time he saw him which could have been the very next day.

Plaintiff saw Nurse Gower within two weeks of the fall, at which time Nurse Gower looked at Plaintiff's shoulder, rubbed it, and instructed Plaintiff to exercise the shoulder.[4] Plaintiff claims that his shoulder was obviously swollen and had a noticeable two inch "bump" on it. Nurse Gower denies that she saw any swelling or bump on Plaintiff's shoulder. Plaintiff was provided 800 milligrams of Ibuprofen per day, beginning on August 16, 2007. That was increased to twice per day on August 21, 2007, and discontinued altogether on September 7, 2007.

Plaintiff was again seen by Nurse Gower on September 3, 2007. Nurse Gower claims that at that time she measured both of Plaintiff's thighs, although Plaintiff does not recall whether that happened or not.

On September 6, 2007, Nurse Gower was called by the jail at approximately 8:30 p.m. and told that Plaintiff was complaining about either coughing-up, or vomiting-up, blood. In response, Nurse Gower told jailers to give Plaintiff Pepto Bismol tablets. Nurse Gower called the jail at approximately 11:30 p.m. and told the jailers not to disburse Ibuprofen to Plaintiff the following day, September 7, 2007. The parties dispute whether Plaintiff was coughing-up or vomiting blood, but agree that the latter is a potentially much more serious condition.

Nurse Gower claims that on September 7, 2007, she called the Medical Director's Office and informed the office that Plaintiff complained of coughing-up blood. She also claims that she was

_____

[4]The exact date of the fall and when Plaintiff may have been seen by Nurse Gower is not clear from the record. For example, Plaintiff indicates that the fall occurred sometime in mid-August and that he was seen within two weeks. Plaintiff's mother, who visited her son at the jail, testified in her deposition that the date of Plaintiff's fall was August 15, 2007, and that he reported it on August 18, 2007. The medication logs indicate that Plaintiff began receiving Ibuprofen on August 16, 2007. Again, the medical records would most likely be of assistance in settling questions as to the relevant dates.

5

told the Ibuprofen could have caused the episode Plaintiff experienced and therefore wrote on the board in the jailer's office that Plaintiff was not to receive any more Ibuprofen.

Also, on September 7, 2007, Plaintiff's mother, Kathy Raynor ("Ms. Raynor"), called Vanderbilt Medical Center and reported that Plaintiff had coughed up blood and his right leg was swollen. Cathy R. Payne from the Vanderbilt Medical Center then called the Wayne County Jail and "left msg encouraging jailer to seek emergent [sic] medical attention for this pt i[f] report is accurate." Docket Entry No. 83 at P00036).

The following day, September 8, 2007, Ms. Raynor brought in a bottle of Tylenol for Plaintiff. Nurse Gower claims she told the correctional officers that Plaintiff could have two Tylenol tablets per day from this supply and that she never instructed anyone that Plaintiff could not receive Tylenol. Plaintiff claims, however, that, at some point, the jailers began refusing his requests for Tylenol.

On September 9, 2007, Plaintiff was moved to the Wayne County Jail holding cell, commonly used (and referred to) as the "drunk tank," where he remained for the next seventeen days. Defendants claim the move was for purposes of medical observation. The holding cell has no bed, but instead has a 3"-4" mat on the floor. Plaintiff claims, with some support from the deposition testimony of fellow inmates, that the holding cell was often used by jailers as punishment for chronic complainers. Nurse Gower admitted in her deposition that Plaintiff was one of the "bigger complainers" (Gower Depo. at 59) at the Wayne County Jail.

On September 10, 2007, Nurse Gower ordered that photographs be taken of Plaintiff's right leg and his stance. Based upon this examination, Nurse Gower determined that Plaintiff needed no further treatment with respect to his leg.

6

On October 17, 2007, Plaintiff was transferred to Lewis County Jail for temporary housing. Upon intake, Plaintiff did not report a shoulder injury or shoulder pain among his injuries in the "comment" section of the booking intake form, nor did he seek medical attention for either his shoulder or leg during the two-week period he was incarcerated at the Lewis County Jail. On October 30, 2007, Plaintiff was transferred to Charles Bass Correctional Center and his shoulder injury was discovered during the intake process.

On November 15, 2007, Plaintiff was seen by Dr. Thomas J. Limbird ("Dr. Limbird"). Dr. Limbird diagnosed a Schedule III Acromioclavicular Joint Separation. Dr. Limbird testified in his deposition that when a shoulder separation occurs, it "[h]urts like crazy" because ligaments are torn. He stated that the pain can be moderate to severe, depending on the "degree of injury and the perception of the patient." He also testified that a shoulder separation is something which would be noticed immediately due to edema. (Limbird Depo. at 19).

At the time of his initial examination, Dr. Limbird rated Plaintiff's injury as a "Level 3" shoulder separation which falls in the middle of the one to five scale for such injuries. "Level 3" separations generally do not require emergency surgery, meaning surgery is not necessary to preserve a life or limb. Dr. Limbird also testified that Level 3 injuries are usually initially treated conservatively with the use of a sling or brace, ice, exercise, and anti-inflammatory medication.

Dr. Limbird again examined Plaintiff's shoulder on March 12, 2008. At the time, Dr. Limbird observed that the joint was swollen and tender and that Plaintiff's range of motion was limited due to pain. Plaintiff was scheduled for shoulder surgery and the same was performed at the Nashville Metro General Hospital ("Metro Hospital").

7

During his incarceration at the Wayne County Jail, Plaintiff was never allowed to see a physician. Defendants assert that the physician who covered the jail did not make jail visits and that Nurse Gower would contact the physician or his nurse to explain situations involving inmates' medical conditions. The physician or his nurse would then schedule an appointment at the medical clinic for the inmate if deemed necessary.

In support of their Motion for Summary Judgment, Defendants rely upon the expert report of Dr. Joseph A. Wieck ("Dr. Wieck"), an orthopedic surgeon. Dr. Wieck formulated his report based upon the Complaint, a copy of a photograph of Plaintiff's right leg taken while Plaintiff was incarcerated at the Wayne County Jail, the deposition of Dr. Limbird, X-rays of Plaintiff's shoulder, and the medical records maintained by Metro Hospital, Vanderbilt Medical Center, and the Tennessee Department of Corrections. Based upon his review of that material, Dr. Wieck opines that there is no evidence Plaintiff had a serious medical condition in regard to his right leg which required immediate medical treatment, or any sign that there was anything visibly abnormal about the leg which would have alerted anyone about the need for treatment; that it would have been highly unusual for someone who had suffered the injuries Plaintiff had received in the auto accident to still require the use of a walker; that a "Level three" shoulder injury would cause immediate and severe pain, but that it would not require immediate surgery; that with such a shoulder injury one would not be able to use a walker because of the pain; and that it was "highly likely" Plaintiff did not follow orders that the shoulder be kept immobile.

## II. SUMMARY JUDGMENT STANDARDS

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See

8

Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III.  APPLICATION OF LAW

Defendants seek summary judgment with respect to the claims against the individual Defendants and the Wayne County Sheriff's Department on the grounds that they are not proper Defendants to this Section 1983 action. Defendants also move for summary judgment on substantive grounds, arguing that Plaintiff has failed to submit sufficient evidence to create a triable issue of fact on whether Plaintiff was deprived of a constitutional right while at the Wayne County Jail.

9

**A.  Suit Against Wayne County Sheriff's Department and Official Capacity Defendants**

Defendants first move for summary judgment by arguing that the only proper Defendant to this action is Defendant Wayne County and therefore the Wayne County Sheriff's Department, Mayor Rich, and Sheriff Wilson should be dismissed.  Plaintiff does not directly respond to this argument.

The Wayne County Sheriff's Department is not a proper defendant to a Section 1983 claim. See, Sargent v. City of Toledo Police Dept., 150 Fed. Appx. 470, 475 (6th Cir. 2005)(citation omitted)("police departments are merely sub-units of the municipalities they serve"); Matthews v. Jones, 35 F.3d 1046, 1049 (6th Cir. 1994)(since a police department is not an entity which may be sued under Section 1983, county "is the proper party to address the allegations of [plaintiff's] complaint); Turner v. Blount County, 2008 WL 3842358 at *4 (E.D. Tenn. 2008)("Blount County Sheriff's Department is not a suable entity within the meaning of 42 U.S.C. § 1983"); Buchannan v. Williams, 434 F. Supp. 2d 521, 529 (M.D. Tenn. 2006)('[s]heriff's departments and police departments are not 'bodies politic'" capable of being sued under Section 1983).  Accordingly, that Defendant will be dismissed from this action.

Mayor Rich and Sheriff Wilson are sued in their official capacity as employees of Wayne County.  As such, Plaintiff's claims against them are "are nothing more than a suit against [Wayne] County itself." Petty v. County of Franklin, 478 F.3d 341, 349 (6th Cir. 2007)(citing, Kentucky v. Graham, 473 U.S. 159, 166 (1985)).  Therefore, the real party in interest is Wayne County, a Defendant herein, and the claims against Mayor Rich and Sheriff Wilson will be dismissed.  See, Kramer v. Luttrell, 189 Fed. Appx. 361, 366 (6th Cir. 2006); Jackson v. Gill, 70 Fed. Appx. 249, 250 (6th Cir. 2003).

**B. Deliberate Indifference and Governmental Liability**

Defendants move for summary judgment by arguing that Plaintiff has failed to set forth sufficient facts from which a jury could conclude that Wayne County was deliberately indifferent to a serious medical need. Defendants also argue that Plaintiff cannot establish municipal liability so as to hold Wayne County liable.

**1. Deliberate Indifference**

A person being detained by local authorities may bring a claim under 42 U.S.C. § 1983 for deliberate indifference to a serious medical need. "Deliberate indifference requires a degree of culpability greater than mere negligence, but less than 'acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" Miller v. Calhoun County, 408 F.3d 803, 812 (6th Cir. 2005)(citation omitted). Negligence or medical malpractice alone is insufficient to establish deliberate indifference. Perez v. Oakland County, 466 F.3d 416, 423 (6th Cir. 2006).

To establish deliberate indifference, it must be shown that a defendant realized a risk of harm yet consciously disregarded it, and the test consists of both an objective and subjective component. Farmer v. Brennan, 511 U.S. 825, 834 (1994). The medical needs must be objectively and sufficiently serious, and a "plaintiff must produce evidence showing 'that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk.'" Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001) (citation omitted). "The requirement that the official have subjectively perceived a risk of harm and then disregarded it is meant to prevent the constitutionalization of medical malpractice claims[.]" Id.

11

This two-part standard was announced by the Supreme Court in <u>Farmer</u>, a decision involving

a prison official's duty to protect inmates from violence, and reviewed by the Sixth Circuit in

<u>Terrance v. Northville Regional Hosp.</u>, 286 F.3d 834 (6th Cir. 2002) in the context of a medical

mistreatment case:

> In <u>Farmer</u>, the Court held that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id</u>. at 837, 114 S.Ct. 1970. However, "an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that a harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." <u>Id</u>. at 842, 114 S.Ct. 1970. Further, "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." <u>Id</u>.
>
> The federal courts have also held that less flagrant conduct may also constitute deliberate indifference in medical mistreatment cases. For example, the Eleventh Circuit has held that "deliberate indifference may be established by a showing of grossly inadequate care as well as a decision to take an easier but less efficacious course of treatment." <u>McElligott v. Foley</u>, 182 F.3d 1248, 1255 (11th Cir.1999)(a doctor's awareness that plaintiff's condition was deteriorating and subsequent failure to treat plaintiff could support a finding of deliberate indifference); see <u>Waldrop v. Evans</u>, 871 F.2d 1030, 1035 (11th Cir. 1989)(a doctor's decisions to remove patient from medication and to restore the medication without Lithium constitutes deliberate indifference to patient's psychiatric condition). Moreover, "[w]hen the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." <u>Mandel v. Doe</u>, 888 F.2d 783, 789 (11th Cir. 1989)(a physician's assistant's failure to inform his superior or a medical doctor of a prisoner's known injured leg constitutes deliberate indifference); <u>Cooper v. Dyke</u>, 814 F.2d 941, 945-46 (4th Cir. 1987)(a prison employee's two-hour delay in providing medical care to an inmate known to have gunshot wounds constitutes deliberate indifference).

<u>Id</u>. at 843 -844.

12

In this case, Plaintiff claims that he has presented questions of fact so as to require a jury to determine whether Nurse Gower was deliberately indifferent to his serious medical needs. Specifically, he claims that Nurse Gower interfered with the prescribed course of treatment mandated by Vanderbilt Medical Center, that he was deprived of medical care and subjected to punitive action when medical care was requested, that Defendants failed to take action to prevent the substantial and foreseeable risk of a fall, and/or that he was provided with grossly inadequate medical treatment in relation to his shoulder injury. Defendants have raised several arguments in opposition to these contentions which the Court considers in turn.

Defendants first argue that Plaintiff did not raise the question of the alleged deprivation of prescription medications in his Complaint, and that he only does so in response to the Motion for Summary Judgment. Defendants claim not only is this improper, it is prejudicial.

While Plaintiff does not in fact allege in his Complaint that he suffered a deprivation of his constitutional rights specifically because he was denied prescription medications, he does generally allege deliberate indifference by the Defendants during the course of his stay at the jail and, more pointedly, alleges that the Defendants "were deliberately indifferent to the Plaintiff's need for follow-up treatment after major surgery, as recommended by Vanderbilt Medical Center upon his discharge." (Complaint ¶ 26) Treatment obviously includes medicine.

Further, Defendants' suggestion that the late revelation of this claim deprived them of the opportunity for discovery on the issue of whether Plaintiff was unconstitutionally deprived of prescription medication is belied by the fact that during discovery depositions numerous questions were asked about the jail's policy in relation to giving inmates prescribed drugs. For example, Jail Administrator Jones was asked about such a policy and specifically asked about what the policy

13

would be if, for example, after a serious car accident a treating physician at Vanderbilt Medical Center gave a prescription to an individual who later found himself in the county jail. (Jones Depo. at 25-26). Further, Nurse Gower was asked many specific questions about Plaintiff's accident, the medications he received for that accident, whether he was given those medications, and whether she talked with the Medical Director about Plaintiff's medications. Based on this record, the Court finds that the claim about Defendants' failure to give Plaintiff his prescribed drugs is within the ambit of the allegations of deliberate indifference in the Complaint and should not have been a surprise to Defendants when they formulated their Motion for Summary Judgment.

Defendants next assert that Plaintiff cannot make a threshold showing of deliberate indifference because he provides no expert testimony, whereas Defendants have provided the expert testimony of both Dr. Wieck and Dr. Limbird. Insofar as Defendants are suggesting that expert medical testimony is necessary in all cases alleging deliberate indifference the Court disagrees. The Sixth Circuit has held that a plaintiff is required to supply "verifying medical evidence" where the deliberate indifference claim involves "minor maladies or non-obvious complaints of a serious need for medical care." Blackmore v. Kalamazoo County, 390 F.3d 890, 898 (6th Cir. 2004). Such evidence is not required "where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers." Id. at 899.

Here, when the facts are construed in Plaintiff's favor, Plaintiff has made a threshold showing of deliberate indifference. Among other things, he told one jail official he had been injured in an automobile accident and he received injuries, including a broken leg which required the insertion of a rod in his right femur. He complained repeatedly about pain in his leg from the start

14

of his incarceration, but those concerns were brushed off. He was not allowed to use his walker except during exercise periods, nor was he allowed to take prescription pain medicine or other medications. He also claims his leg became numb and obviously swollen, but he received no treatment, notwithstanding a call from Vanderbilt Medical Center which informed the jail that if Plaintiff was coughing-up blood and his leg was swollen he needed emergency medical treatment. Plaintiff also claims that after he suffered a shoulder separation from a fall in the shower due to the numbness in his right leg, he received only token attention from Nurse Gower. Even though his shoulder separation injury was obvious because his shoulder was swollen and had a knot protruding, Nurse Gower rubbed it and told him to exercise the shoulder. Although the shoulder injury created intense pain, he received only Ibuprofen (which was later discontinued), notwithstanding the fact that conservative treatment called for a brace or a splint, ice, pain medication, and prescribed exercises. "[T]he turning of a blind eye to the legitimate medical needs of a prisoner-patient, including his complaints of pain, can constitute a violation of the Eighth Amendment" and "delay[] in treating non-life-threatening but painful conditions constitute a failure to address a serious medical need." Rodriguez v. Plymouth Ambulance Serv.,2009 WL 2498580 at *10 (7th Cir. 2009).

Defendant next argues that Plaintiff offers no proof that something should have been done to treat his leg injury while he was at the Wayne County Jail and that Plaintiff merely "disagree[s] with Nurse Gower's, and since then, Dr. Wieck's assessment of his leg." (Docket Entry No. 125 at 11). Defendants further note that "Dr. Wieck has stated that Nurse Gower did not deviate from the standard of care in this regard" and that "is the only expert testimony on this issue." (Id.).

However, and as indicated, expert testimony is not necessary when the need for medical care is obvious, and Plaintiff makes that contention in this case. Further, there is some medical evidence

15

in the record which supports Plaintiff's claim in relation to his leg and that is the phone call from Vanderbilt Medical Center to the effect that if his complaints were true (i.e. he was coughing-up blood and his leg was swollen) then he needed emergency medical care, care which was not thereafter provided. Although Nurse Gower did order photographs be taken of Plaintiff's leg and stance on September 10, 2009, almost three months after the auto accident and over five weeks after his admission to the jail, Plaintiff was never allowed to see a physician.

Dr. Wieck's assessment does not alter this Court's conclusion. In his expert report, Dr. Wieck, who never examined Plaintiff, states that "there is no evidence that Mr. Nance had a serious medical condition for which immediate medical attention was required" and in making this assessment states that "[t]here is no evidence that Mr. Nance sustained any swelling or redness around the incision in this photograph which would indicate that his right leg required medical examination." (Wieck Expert Report at 2). However, there is in fact evidence which the Court is not at liberty to disregard and that is the testimony by Plaintiff that his leg was red, swollen and painful. Further, the "photograph" Dr. Wieck references is a photograph of Plaintiff's right leg taken by Nurse Gower. Interestingly enough, Dr. Limbird also examined photographs of Plaintiff's right leg taken while Plaintiff was incarcerated at the Wayne County Jail and he describes those photographs as being of poor quality and that it would be "inappropriate" to make any judgment based upon those photographs. (Limbird Depo. at 38).

Defendants also argue that Plaintiff's deliberate indifference claim fails because he cannot show Nurse Gower knew of and disregarded an excessive risk to Plaintiff's health as required by Farmer. After all, Nurse Gower testified that she was conscientious in her care of Plaintiff and addressed his concerns when they were brought to her attention.

16

However, "government officials do not readily admit to the subjective component of the [deliberate indifference] test" Dominguez v. Correctional Medical Serv's., 555 F.3d 543, 550 (6th Cir. 2009), and, therefore, under Farmer, subjective knowledge may be inferred from circumstantial evidence, Farmer, 511 U.S. at 842. In fact, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" Dominguez, 555 F.3d at 550 (quoting, Terrance, 286 F.3d at 843).

Viewing the facts in a light most favorable to Plaintiff, a jury could conclude that Nurse Gower should have been aware of an excessive risk to Plaintiff's health. At the time Plaintiff entered the Wayne County Jail, he had recently been in an automobile accident which severely injured his right leg and for which he received medication for pain. Upon entry into the jail he complained about intense pain in his leg, but received no medication for the pain. On August 10, 2007, he complained of redness, swelling and numbness in his right leg, but received no medical care. Approximately a week later, he took a shower (apparently unassisted despite the fact that he used a walker outside his cell) and his right leg collapsed, causing a shoulder separation and intense pain. He received Ibuprofen for pain, but no other medical care, even though conservative treatment called for the use of a brace or sling, ice, and prescribed exercises. When he began either throwing-up or coughing-up blood and complained that his leg was still swollen and numb, Tylenol provided by his mother was substituted for Ibuprofen, but he received no other care in spite of a call from Vanderbilt Medical Center which indicated that he might need emergency medical care. Instead of receiving such medical care, Plaintiff was placed in a drunk tank which allegedly was used not only for those who were intoxicated, but those who complained. A jury could infer from such facts, if

17

true, that Plaintiff had objectively serious medical needs which were not addressed and that Nurse Gower recognized or should have recognized those needs in her role as a jail healthcare provider.

### 2. Governmental Liability

Defendants also argue that Plaintiff cannot establish that the county is liable for any deprivation which may have occurred at the hands of Nurse Gower. Specifically, Defendants argue that Plaintiff has not shown any custom, policy, or practice of Wayne County to deprive jail inmates of their constitutional rights.[5]

A local governmental entity is not liable under Section 1983 for an injury inflicted solely by its employees or agents, as there is no *respondeat superior* liability under the statute. Gregory v. Shelby County, 220 F.3d 433, 441 (6th Cir. 2000). Instead, such liability generally attaches only where it is shown that the constitutional deprivation arose as a result of a policy, regulation, or decision officially adopted by the governmental entity. See Monell v. Department of Soc. Servs., 436 U.S. 658, 694 (1978).

Nevertheless, the Supreme Court has stated "it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances" where "the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986). Liability attaches in such

---

[5]In his brief, Plaintiff notes that the Sixth Circuit has indicated that where a supervisor is the official directly responsible for the constitutional deprivation and that individual adopts procedures which lead to the deprivation, there can be liability under Section 1983. Taylor v. Mich. Dep't. of Corrections, 69 F.3d 76, 81 (6th Cir. 1995). However, the Sixth Circuit has also cautioned against conflating an individual's supervisory liability and municipal liability. Phillips v. Roane County, 543 F.3d 531, 543 (6th Cir. 2008). In this case, while Nurse Gower was supervisor in relation to the giving of medical care at the jail, she is not a Defendant and the issue is whether the remaining Defendant, Wayne County, is liable.

circumstances "where – and only where – a deliberate choice to follow a course of action is made from among various alternatives by the officials or officials responsible for establishing final policy with respect to the subject matter in question." Id. "The authority to exercise discretion while performing particular functions does not make a municipal employee a final policymaker unless the official's decisions are final and unreviewable and are not constrained by the official policies of superior officers." Waters v. City of Morristown, 242 F.3d 353, 362 (6th Cir. 2001).

"[T]he identification of policymaking officials is a question of state law." City of St. Louis v. Praprotnik, 485 U.S. 112, 124 (1988). "Helpful in determining whether an official is a final decisionmaker is an inquiry into: (1) whether the official is constrained by policies of other officials or legislative bodies; (2) whether the official's decision on the issue in question is subject to meaningful review; and (3) 'whether the policy decision purportedly made by the official is within the realm of the official's grant of authority.'" Valentino v. Village of South Chicago Heights, 2009 WL 2253406 at **8 (7th Cir. 2009)(collecting cases and quoting Randle v. City of Aurora, 69 F.3d 441, 448 (10th Cir. 1995)). "Also helpful is an examination of not only 'positive law, including ordinances, rules and regulations, but also the relevant customs and practices having the force of law.'" Id. (quoting Mandel v. Doe, 888 F.2d 783, 793 (11th Cir. 1989)(other citations omitted) for the proposition that municipal liability attached where "physician's assistant, and not supervising doctor, had final policymaking authority with respect to medical decisions made at road prison").

"[T]he identification of those officials whose decisions represent the official policy of the local government unit is itself a legal question to be resolved by the trial judge before the case is submitted to the jury." Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989). Based upon the record as it presently exists, the Court finds that Defendants have not shown that they are entitled

to judgment as a matter of law on the issue of municipal liability.  See, Hardy v. Town of Greenwich, 2009 WL 1857297 at *8 (D. Conn. 2009)(denying summary judgment and reserving judgment on issue of whether defendant governmental employee acted under a mere grant of discretion or actual delegation of final authority until evidence was presented at trial); Parker v. City of New York, 2006 WL 1495410 at *3 (E.D.N.Y. 2006) (reserving judgment on whether supervisor held policymaking authority until close of plaintiff's proof).

In support of their motion on the issue of municipal liability, Defendants point to Tennessee state law which provides that a sheriff has the duty to take charge of the custody of the jail and the prisoners therein.  T.C.A. § 8-8-201(a)(3).  Defendants also point out that the Wayne County Sheriff Department has a Policies and Procedures Manual ("Procedures Manual") which indicates that the Sheriff is responsible for the implementation of any rules, regulations, policies, or procedures for the care of prisoners.

However, the Tennessee statute defines the sheriff's duties broadly and does not prohibit delegation.  Further, the Procedures Manual on which Defendants rely has a Chapter relating to inmate healthcare which can be read as providing others with decisionmaking abilities in relation to inmate healthcare.  Specifically, Section 17.02 is titled "Healthcare Policy and Procedures" and provides:

> The jail staff and jail supervisors are the team most directly involved with the daily interaction with inmates and their health problems.  The degree to which any jail health program succeeds lies with their training, supervision and continuous attention to duty.  Supporting documentation must exist proving essential functions were done. Any significant revision involving jail health or inmate well-being should [be] brought to the attention of the jail nurse for review and approval process.  Revisions shall be issued as they are needed.

20

(Second Wilson Aff. Ex. 2)(emphasis added).[6] Section 17.03 titled "Facility Healthcare: Structure and Personnel Responsible Healthcare Provider" provides:

> Overall responsibility for inmate medical care rests with the responsible provider appointed by the Wayne County Sheriff. Dr. Joe I. Hall is the Wayne County Sheriff's Department Medical Director and serves as a "good" Samaritan.
>
> The facility nurse participates in supervision and assures provisions for the basic and emergency care for inmates are provided.

(Id.). Further, Section 15.05 which is titled "Health and Welfare of Prisoners" provides that all jailers are required to follow certain procedures and that "all medical/dental appointments are made by Nurse, Doctor, or Jail Administrator (unless authorized by Chief or Sheriff)". (Docket Entry No. 116-3).

Additionally, Plaintiff has presented evidence from which it could be concluded that Nurse Gower was essentially given *carte blanche* in relation to the implementation of the medical policy in relation to the jail, including the administration of healthcare to inmates. In his deposition, Jail Administrator Jones admitted that the jail staff deferred to the Jail Nurse in relation to medical matters and that he would defer to the Jail Nurse in relation to the interpretation of policy relating to medical matters. (See Jones Depo. at 23, 25, 26, & 32). He also testified that he trusted Nurse Gower to follow the policies and procedures as set out in the Procedures Manual. (Id. at 44).

It is impossible to determine from the record as it has been presented whether Nurse Gower acted as a final decisionmaker with respect to the medical care at the Wayne County Jail. Some evidence suggests that Nurse Gower made decisions regarding the need for outside treatment,

---

[6]While Defendants claim that all this provision means is that Nurse Gower collected suggestions and passed them on to the Sheriff for his ultimate approval, there is a question presented by the record if this is in fact what occurred given the testimony which suggests that Nurse Gower basically ran all facets of medical care at the jail.

21

unconstrained by any policies or procedures and that her decisions were not reviewed by others, let alone the Sheriff who ostensibly was responsible for the care of inmates. See, Mandel, 888 F.2d at 794 (physician's assistant was deemed final policymaker for road prison where record showed that while it was contemplated she would be supervised by medical doctor, evidence showed that custom and practice developed where she was allowed to function without any meaningful supervision). The Court will hear the testimony at trial in order to resolve the issue of whether Nurse Gower was in fact a final decisionmaker for purposes of the medical care given in this case and/or whether that authority was explicitly or implicitly given to her.

### IV. CONCLUSION

On the basis of the foregoing, Defendants' Motion for Summary Judgment (Docket Entry No. 65) will be granted with respect to the claims against Defendants Wayne County Sheriff's Department, Mayor Jason Rich and Sheriff Ric Wilson and those claims will be dismissed. The Motion will be denied with respect to Plaintiff's claims against Defendant Wayne County.

An appropriate Order will be entered.

ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

22